# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF RIVERSIDE, a California charter city and municipal corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MITSUBISHI HEAVY INDUSTRIES, LTD, a Japanese corporation; MITSUBISHI NUCLEAR ENERGY SYSTEMS, INC., a Delaware corporation; MITSUBISHI HEAVY INDUSTRIES AMERICA, INC., a Delaware corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO. 13-CV-1724-BEN (KSC)<br><br>**ORDER GRANTING MOTION TO STAY PROCEEDINGS PENDING ARBITRATION**<br><br>[Docket No. 5] |

Before this Court is a Motion to Stay Proceedings Pending Arbitration brought by Defendants Mitsubishi Heavy Industries, Ltd. (MHI), Mitsubishi Nuclear Energy Systems, Inc. (MNES), and Mitsubishi Heavy Industries America, Inc. (MHIA). (Docket No. 5). For the reasons stated below, the Motion to Stay is **GRANTED**.

## I. Background

The San Onofre Nuclear Generating Station ("SONGS") is located near San Clemente, California. The majority owner is Southern California Edison (Edison). The City of Riverside (Riverside) and Plaintiff San Diego Gas & Electric Company (SDG&E) are minority co-owners.

On or about September 28, 2004, MHIA and a subsidiary of Edison, Edison Material Supply LLC (EMS), entered into a Purchase Order whereby MHIA was to design, fabricate, and deliver four replacement steam generators (RSGs) for SONGS. MHIA allegedly assigned its contract rights to MNES in 2007, and MHI is alleged to have provided a parent guaranty. (First Am. Compl. (FAC) ¶ 55). Riverside alleges that the Second Amended Operating Agreement states that Edison is the "Operating Agent" for the other owners of SONGS, and that Edison is responsible for operation, maintenance, and the making of capital improvements. (*Id.* ¶ 11). Riverside further alleges that the Purchase Order defines Edison as Southern California Edison Company, acting either for itself or as an operating agent for any co-owner participating in the project. (*Id.* ¶ 24). It claims that EMS was acting as an agent of Edison and the SONGS co-owners. (*Id.*) Riverside claims that it is a disclosed principal, that EMS acted as agent for Edison and Riverside, and that Riverside has direct rights under the purchase order. (*Id.* ¶¶ 55, 77). In the alternative, it claims to be a third-party beneficiary. (*Id.* ¶¶ 64, 77).

The Purchase Order incorporates by reference a set of General Terms and Conditions which includes a "Dispute Resolution" provision. "Dispute" is broadly defined to include "any dispute, controversy or claim between or among Supplier and EMS or Edison arising from or relating to the Purchase Order or the performance of the Work." (Croutch Decl., Ex. B § 1.22). The provision provides for an informal procedure for resolving disputes, and mandates binding arbitration if the parties cannot reach an informal resolution. (*Id.*) The informal procedure includes giving written notice, providing a written response, and meeting to exchange information and attempt to resolve the dispute. (*Id.* § 1.22.1). The provision also states that:

> If the Dispute has not been resolved through negotiation within ninety (90) days after the date of the notice of Dispute received pursuant to Section 1.22.1, the Dispute shall be finally settled and resolved by arbitration in accordance with the ICC Rules, subject to such modifications of the ICC Rules as are set forth in this Section 1.22.2.

(*Id.* § 1.22.2.1). The Terms and Conditions state that: "The procedures specified in this

1  Section 1.22 shall be the sole, exclusive procedures for the resolution of Disputes . . .
2  ." (*Id.* § 1.22.5).

3  A disagreement has now arisen with regard to the RSGs which were provided
4  pursuant to the Purchase Order. Edison and EMS initiated dispute resolution
5  proceedings under the Purchase Order and the Terms and Conditions (collectively, "the
6  Contract") by providing a written notice of dispute. The written notice specifically
7  invoked the Contract and stated that notice was provided "individually and in its
8  capacity as Operating Agent of [SONGS]" (Croutch Decl., Ex. C, at 1). Edison and
9  EMS requested arbitration on October 16, 2013. (Notice of Filing of Request for
10 Arbitration). Riverside has not sent a written notice of dispute or demanded arbitration.

12 Riverside filed suit in San Diego Superior Court on July 18, 2013. (Notice of
13 Removal, Ex. A). Defendants removed the action on July 24, 2013. Riverside filed a
14 First Amended Complaint on September 4, 2013, alleging eight causes of action based
15 on the Contract and the provision of the RSGs, including recission, breach of contract,
16 breach of express warranty, breach of implied warranty, concealment, intentional
17 misrepresentation, negligent misrepresentation, and negligence. (FAC). Defendants
18 now ask this Court to stay proceedings pending arbitration. This Court held a hearing
19 on March 10, 2014.

20 **II. Legal Standard**

21 The parties agree that the contract at issue is subject to the Federal Arbitration
22 Act (FAA). The FAA states that agreements to arbitrate are "valid, irrevocable and
23 enforceable." 9 U.S.C. § 2. Section 3 provides that where an issue involved in a suit
24 or proceeding is referable to arbitration under an agreement in writing, the district court
25 "shall on application of one of the parties stay the trial of the action until such
26 arbitration has been had in accordance with the terms of the agreement . . ." 9 U.S.C.
27 § 3. The language is mandatory, and district courts are required to order arbitration on
28 issues as to which an arbitration agreement has been signed. *Kilgore v. KeyBank*, *N.A.*,

718 F.3d 1052, 1058 (9th Cir. 2013) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). The role of the district court is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F. 3d 1126, 1130 (9th Cir. 2000).

Arbitration is a matter of contract, and a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (citation omitted). A court must therefore determine whether there is an agreement to arbitrate before ordering arbitration. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996). State law applies to determine which contracts are binding and enforceable under the FAA, if that law governs the validity, revocability, and enforceability of contracts generally. *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). Where a written arbitration provision is made enforceable against a third party under state contract law, the FAA's terms are fulfilled. *Id.* at 631.

As the claims for relief are state law claims, a federal court exercising diversity jurisdiction applies the law of the state in which it sits. *Dees v. Billy*, 357 Fed. App'x 813, 815 (9th Cir. 2009). In the absence of a controlling California Supreme Court decision, federal courts look to intermediate appellate court decisions. *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1069 (9th Cir. 2013).

California state law states that one must generally be a party to an agreement to be bound by it or invoke it. *DMS Servs., LLC v. Super. Ct.*, 205 Cal. App. 4th 1346, 1352 (2d. Dist. 2012). However, there are limited exceptions to the rule which allow nonsignatories to be compelled to arbitrate a dispute within the scope of the agreement, including agency, estoppel, and third-party beneficiary. *Id.* at 1353. These exceptions are generally based on the existence of a relationship between the nonsignatory and the signatory, such as principal and agent, where a "sufficient identity of interest exists between them." *Id.* (internal quotation omitted).

## III. Discussion

Riverside opposes the Motion on the basis that it is not bound by the arbitration clause and that if forced to arbitration, it may not be able to present its claims against Defendants.

### A. Riverside is Bound to the Arbitration Clause By Equitable Estoppel

Riverside contends that it should not be forced to arbitrate its dispute because it is not a signatory to the contract, and is not bound by the arbitration provision. It is undisputed that Riverside did not sign the contract. However, Defendants assert that Riverside is nonetheless bound by the arbitration provision. Defendants emphasize that Plaintiff's claims are based upon the contract, and argue that Riverside is bound by the Terms and Conditions based on its own allegations. (Mot. at 4-5, 7).

California law recognizes that equitable estoppel can apply to permit a signatory to an arbitration agreement to compel a nonsignatory to arbitrate claims which are dependent upon, or inextricably intertwined with, the obligations imposed by an agreement. *JSM Tuscany, LLC v. Super. Ct.*, 193 Cal. App. 4th 1222, 1240-41 (2d Dist. 2011). When a plaintiff brings a claim which "relies on contract terms" against a defendant, the plaintiff can be equitably estopped from repudiating the arbitration clause contained in that agreement. *Id.* at 1239. When a plaintiff sues on a contract on the basis that, even though the plaintiff is not a party, they are entitled to recover for its breach, "the plaintiff should be equitably estopped from repudiating the contract's arbitration clause." *Id.* (citations omitted).

Similarly, California law allows a nonsignatory to be compelled to arbitration where: (1) the nonsignatory is a third-party beneficiary of the contract containing the arbitration agreement; and (2) a "preexisting" relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim. *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1069-70 (1st Dist. 2008) (citations omitted).

The facts of this case demonstrate that equity requires that Riverside be estopped from refusing to comply with the dispute resolution provision. Riverside clearly brings claims based upon the Contract, including breach of contract. Riverside repeatedly asserts that it can recover because it has direct rights, or is a third-party beneficiary. Riverside seeks to benefit from the Contract by recovering for causes of action arising from the Contract. Equity requires that it abide by the agreement to use arbitration to resolve Contract disputes.

B. Equity Requires that Riverside be Compelled to Participate as a Full Party

Riverside expresses concern that Defendants will use the language of the Contract to limit Riverside's ability to prosecute its claims in arbitration. In particular, it appears to be concerned that the definition of "Parties" in the arbitration provision will be used to prevent Riverside from asserting its rights. Riverside appears to suggest that the provision might be unconscionable if Riverside does not have what it considers to be "full rights." (Opp'n at 10). It is apparent from the hearing conducted on the Motion that Defendants seek to hold Riverside to the arbitration provision, but will attempt to prevent Riverside from presenting its own arguments in the arbitration.

A court's role in enforcing arbitration agreements is limited, and the rights of parties and the procedures used in arbitration are generally left to the arbitrators. This case presents the special instance, however, where one party's interpretation of the arbitration procedures would render enforcement of the arbitration provision inequitable and unjust.

Defendants ask this court to determine that equity requires Riverside to arbitrate its claims. An appeal to the equity jurisdiction of a court is an appeal to the sound discretion which guides the courts of equity. *See Hecht v. Bowles*, 321 U.S. 321, 329 (1944). The essence of equity jurisdiction has been the power to "do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it." *Id.* A court cannot properly exercise an equitable power without consideration of the equities on both sides of a dispute. *Cortez v. Purolater Air*

*Filtration Prod. Co.*, 23 Cal. 4th 163, 180 (2000). Equity will not compel Riverside to arbitrate if the arbitration prevents Riverside from asserting its own claims. This Court therefore cannot enforce this provision without taking the consequences into consideration.

Much as equity does not allow Riverside to benefit selectively from the Contract by asserting claims without being bound by the Contract's restrictions, Defendants cannot selectively assert the benefit of the arbitration provision without allowing Riverside to assert its rights. Were it otherwise, this Court could not stay the proceedings and force Riverside to abide by the dispute resolution provision. The co-owners are different entities with different interests and different claims for relief. It would be inequitable to force Riverside to place its claims for relief entirely in the hands of a party with which it may have a conflict of interest. For instance, the possibility that Edison will be accused of contributory negligence may mean that Edison's interests are not aligned with Riverside's interests. Defendants ask this Court to enforce a contract which it interprets as preventing Riverside from asserting its rights for itself in any forum.

Equitable principles thus require that Riverside be allowed to participate fully in the arbitration, and cannot be forced to litigate its claims through Edison or EMS.

C. Riverside Cannot Avoid Arbitration Based on the Language of the Provision

Riverside claims that the arbitration provision excludes Riverside because sections of the Contract purportedly apply the arbitration provision to "the Parties," and the Purchase Order defines the Parties to mean "EMS (or Edison, upon assignment or transfer of the Purchase Order to Edison by EMS) and the Supplier." (Opp'n at 5). The full contract is not before this Court, and some of the provisions cited by Riverside were not provided.

First, nothing cited by Riverside expressly excludes the possibility that a disclosed principal or third-party beneficiary might also be bound by the agreement. Riverside cites no authority that prevents this Court from applying equitable estoppel

simply because the Contract refers to the signatories.

Additionally, although Riverside cites section 1.22.1 for the notion that the provision only applies to the "Parties," the text does not unambiguously limit its scope. The text of that section has been provided, and discusses efforts by the Parties to resolve "Disputes," but never states that the only disputes covered are disputes between the signatories or "Parties." (Croutch Decl., Ex. B, at 9). The Court notes that the Terms and Conditions containing the arbitration provision applies the "Dispute Resolution" provision to "any Dispute." (*Id.*) The Terms and Conditions define "Dispute" to include disputes, etc. "between or among Supplier and EMS or Edison" and "Edison" is defined to include Southern California Edison Company . . . either acting for itself and/or as operating agent for any co-owner participating in the Project." (*Id.* at 8). Riverside quotes this very definition in asserting its rights in the FAC. (FAC ¶ 24). As discussed below, extending the arbitration provision to cover a dispute between Riverside and Defendants does not prevent Riverside from asserting the rights of "Parties."

Riverside also claims that the language of the contract is broader where the parties intended the provision to apply more broadly. However, the example given does not actually state that it is making a promise to EMS and all of the co-owners. Instead, it is a general statement which does not specify to whom the promise is made. There is no reason for this Court to infer from this that the arbitration provision must be interpreted more narrowly.

D.  This Court Need Not Address the Agency Theory

Defendants also argue that Riverside is required to comply with the dispute resolution provision because EMS entered into the contract as Riverside's agent. Riverside itself alleges in its pleadings that EMS entered into the contract as its agent, that Riverside was a disclosed principal, and that Riverside has "direct rights" under the Purchase Order. Defendants cite to out-of-circuit case law in which a non-signatory principal was compelled to arbitrate by an agreement executed by its agent. (Mot. at

7). Defendants also state the general theory that a disclosed principal is a party to a contract if made within the agent's authority. (*Id.*) Defendants contend that although the provision refers to "any dispute, controversy or claim between or among Supplier and EMS or Edison," EMS was acting as the agent for Riverside, and a dispute between Riverside and Supplier would be covered. (*Id.* at 8 n.2).

Riverside contends that the fact that EMS is Riverside's agent is insufficient to bind it to arbitration. It claims that most California decisions address situations in which a nonsignatory attempts to invoke the contract, or a signatory attempts to invoke the contract against the agent who signed the contract. (*Id.*) It contends that California law does not support compelling a nonsignatory to arbitration where the nonsignatory did not sign the agreement, and there is no showing that the nonsignatory knew about the arbitration provision. (*Id.*) Riverside also points out that a principal has been compelled to arbitration where its agent had explicit statutory authority to negotiate that kind of contract for the principal, and the arbitration was directly related to the subject matter about which the agent was authorized to act. (*Id.* at 8). Essentially, Riverside contends that this lawsuit does not fit into any of the situations where California courts have already determined that arbitration can be compelled under agency principles.

Review of the facts put forward by Riverside indicates that Riverside may be bound to arbitrate by agency principles. No party has presented a case that considers a fact situation similar to the one before this Court. However, it is established California law that a disclosed principal may be held liable on a contract made solely in the name of the agent. *Bank of Am. Nat. Trust & Savings Ass'n v. Cryer*, 6 Cal. 2d 485, 488 (1936). Riverside itself alleged that EMS entered into the Purchase Order as its agent. (FAC ¶ 24). Agreeing to dispute resolution provisions is a normal incident of carrying out one's authority to enter into a supply contract. *See Madden v. Kaiser Found. Hosp.*, 17 Cal. 3d 699, 707 (1976) (rejecting argument that authority to agree to arbitration must be specially conferred and stating that arbitration is a "'proper and usual' practice for effecting the purpose' of the agency; [the agent] merely agrees that

disputes arising under the contract be resolved by a common, expeditious, and judicially-favored method").

However, the arbitration provision at issue in this case may be unusual. Defendants argued at the hearing that SDG&E and Riverside were not entitled to fully participate in an arbitration hearing, and had to permit Edison alone to enforce their rights. Although a standard arbitration clause might be a normal incident of entering into contracts, the same cannot be said for a provision that requires parties to both give up their right to litigate their claims in court and to rely on another party to enforce their rights in arbitration.

Defendants have not demonstrated that EMS was authorized to yield Riverside's right to enforce the contract on its own behalf. Review of the portions of the Operating Agreement submitted by Defendants does not support the contention that EMS could enter into such a provision as Riverside's agent. (Reply, Croutch Decl., Ex. A). Nothing in the exhibit indicates that Riverside has agreed that its rights may only be enforced through Edison or EMS. The fact that EMS may have been acting as Riverside's agent in entering the Contract does not indicate that the scope of the agency granted to EMS also gave EMS an *exclusive* right to enforce the Contract. Additionally, nothing in the exhibit indicated that Edison or EMS was authorized to surrender Riverside's rights to enforce its claims.

If the arbitration provision is a standard provision that allows the parties subject to it to present their own claims, then Defendants have demonstrated that Riverside should be subject to that provision under agency principles. If, however, the arbitration provision requires Riverside to give up additional substantial rights, the Defendants have not met their burden of demonstrating that EMS was able to bind Riverside to the provision as Riverside's agent.

The Court does not find it necessary to resolve this question. If it is a standard clause, the outcome is the same as if Riverside is compelled to arbitrate as a full party under an equitable estoppel theory. If Riverside cannot pursue its own claims under the

1  arbitration clause, then it has not demonstrated that the agent had authority to enter into
2  such an extraordinary clause.  In that case, the clause would not bind Riverside under
3  agency principles and Riverside would only be subject to the clause under equitable
4  estoppel.

## CONCLUSION

This Court will not intrude unnecessarily into the province of the arbitration panel.  This Court only determines that Riverside is compelled to arbitrate its claims, and that Riverside must be allowed to assert its claims and argue its own case in arbitration proceedings, and cannot be forced to act only through Edison or EMS.

This Court therefore **GRANTS** the Motion to Stay.  This case is **STAYED** pending arbitration.  This Court shall retain jurisdiction to enforce any arbitration award.  Defendants are **ORDERED** to file a status report with this Court 180 days after this Order is filed, and every 180 days thereafter, until this matter is no longer stayed.

The parties are cautioned that should it appear that Riverside is marginalized or prevented from fully participating in the arbitration proceedings, this Court may either dissolve the order staying litigation, or take such actions into account when considering whether to affirm any arbitration award.

**IT IS SO ORDERED.**

DATED: March 14, 2014

_____
Hon. Roger T. Benitez
United States District Judge